IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ROSEMARIE BENAVIDEZ,**

       **Plaintiff,**

vs.                                                                                                    No. CIV 05-289 WDS

**JO ANNE B. BARNHART, Commissioner**
of the Social Security Administration,

       **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing filed on July 20, 2005. Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security, who determined that Plaintiff was not eligible for disability insurance benefits or supplemental security income. The Court, having considered Plaintiff's Motion [docket # 8] and Memorandum Brief [docket # 9], Defendant's Response [docket # 10], Plaintiff's Reply [docket # 11], the administrative record and applicable law, finds that Plaintiff's Motion should be **GRANTED IN PART,** and that this matter should be remanded to the Commissioner for further proceedings in accordance with this Memorandum Opinion and Order.

### I.  Background

Plaintiff, who was born on May 16, 1951, worked as an accountant for twenty-six years before the onset of her alleged disability. Tr. 85. In December of 2000 Plaintiff began experiencing pain and tingling in her wrists. Tr. 168. Her initial symptoms were attributed to repetitive strain syndrome. Tr. 168. Over the next 18 months Plaintiff's pain became worse, culminating in surgery in June 2002 to relieve pain resulting from a herniated cervical disc. Tr. 203-204. Plaintiff also experiences foot pain resulting from a childhood injury. Tr. 220-221. Plaintiff was also treated for

depression caused by the pain in her neck and shoulders. Tr. 228.

Plaintiff filed her initial application for disability insurance benefits ("DIB") under Title II of the Social Security Act on April 12, 2002, Tr. 74-76. Plaintiff alleged that she became unable to work as a result of her disabling conditions on March 18, 2002. Tr. 74. After Plaintiff's application was denied at the initial level, Tr. 51, and at the reconsideration level, Tr. 52, Plaintiff appealed by filing a request for hearing by an administrative law judge ("ALJ") on April 14, 2003, Tr. 64-66.

The hearing before the ALJ was held on October 7, 2003, at which Plaintiff appeared and was represented by an attorney. Tr. 35-50. Plaintiff alleged that she was disabled as a result of status post-cervical discectomy, pain in her arms, a deformity to her right foot, and mental impairments. In a decision dated April 30, 2004, the ALJ found that Plaintiff was not disabled. Tr. 22-27. Plaintiff then filed a request for review with the Appeals Council on May 13, 2004. Tr. 18. The Appeals Council denied Plaintiff's request for review on February 1, 2005, Tr. 5-7, and thereby rendered the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). *See* 20 C.F.R. §§ 404.981, 416.1481.

On March 16, 2005, Plaintiff filed this action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). After consent by the parties, this case was assigned to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) on February 24, 2004.

## II. Standard of Review

This Court may only review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied. *Andrade v. Secretary of Health & Human Servs.,* 985 F.2d 1045, 1047 (10th Cir. 1993). In determining whether the

Commissioner's findings are supported by substantial evidence, the Court should not re-weigh the evidence, nor should it substitute its judgment for that of the Commissioner. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994). Instead, the Court should meticulously examine the record to determine whether the Commissioner's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1993). The "substantial evidence" standard is satisfied by more than a scintilla, but less than a preponderance, of evidence. *Id.* However, evidence is not substantial if it is overwhelmed by other evidence or if it constitutes a mere conclusion. *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir. 1989).

A sequential five-step analysis applies in determining whether an adult claimant is disabled and entitled to benefits under the Social Security Act. *See Williams,* 844 F.2d at 750-52; 20 C.F.R. §§ 404.1520, 416.920. First, the question is whether the claimant is engaged in substantial gainful activity. *Williams,* 844 F.2d at 750. If so, the claimant is not disabled; if not, the analysis proceeds to step two. *Id.* At the second step, the question is whether the claimant has an impairment or combination of impairments that is severe. *Id.* If not, the claimant is not disabled; however, if the claimant makes the required showing of severity, the analysis proceeds to step three. *Id.* at 750-51. At step three, the question is whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed at Appendix 1, Subpart P, of 20 C.F.R. Part 404 ("Listings" or "Listed Impairment"). *Id.* at 751. If so, the impairment is considered to be presumptively disabling. *Id.* If not, the analysis proceeds to step four, where the question is whether the impairment prevents the claimant from doing past work. *Id.* The claimant is not disabled if he or she can perform past work. *Id.* If the claimant cannot perform past work, the analysis proceeds to step five, where

the burden shifts to the Commissioner to establish that the claimant has the residual functional capacity ("RFC") "to perform other work in the national economy in view of his age, education and work experience." *Id.* (quoting *Bowen v. Yuckert,* 482 U.S. 137, 142 (1987)).  The claimant is entitled to benefits unless the Commissioner establishes that the claimant can "perform an alternative work activity and that this specific type of job exists in the national economy." *Id.* (quoting *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984)).

### III.  Summary of the ALJ's Decision

At step one of the sequential five-step analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  Tr. 23.  The ALJ found at step two that Plaintiff has severe impairments of metatarsalgia[1] and status post cervical diskectomy.  Tr. 24.  The ALJ found that Plaintiff's mental condition was not severe, but stated that she had considered the combined impact of all of Plaintiff's impairments, both severe and non-severe, in the subsequent steps of the sequential evaluation.  Tr. 24.  The ALJ found at step three that Plaintiff's impairments were not severe enough to meet any of the Listings.  Tr. 24.  At step four, the ALJ concluded that Plaintiff retains the RFC to perform sedentary work.  Tr. 26.  Given this RFC assessment, the ALJ found that Plaintiff could perform her past relevant work.  Tr. 26.  Plaintiff alleges that the ALJ failed to consider all severe impairments, erred in her residual functional capacity findings, and erred in finding Plaintiff had the residual functional capacity for performance of past relevant work.

### IV.  Discussion

As an initial matter, Plaintiff has supported her brief with a medical questionnaire completed on May 14, 2004 by her treating physician, Dr. Harvie.  Tr. 270-274.  The questionnaire purports to

---

[1] A cramping burning pain that focuses in the region of the metatarsal bones of the foot.

4

impose physical restrictions on Plaintiff's ability to work, such that she could, for example, sit for less than one hour at a time, and a maximum of two hours per day; and could use her hands for simple grasping or fine manipulation only occasionally. Tr. 273. The questionnaire was prepared by Dr. Harvie two weeks after Plaintiff received the ALJ's opinion finding her capable of performing sedentary work. It appears to the Court that the sole purpose for the questionnaire was to assist Plaintiff in filing an appeal of the ALJ's decision.

Dr. Harvie's own treatment records rebut the limitations indicated in the May 14, 2004 questionnaire. Dr. Harvie performed Plaintiff's surgery in June 2002 and released Plaintiff to return to work in November 2002 with certain restrictions, Tr. 197, but with none of the draconian restrictions indicated in the questionnaire. In fact, Dr. Harvie's treatment record indicates that Plaintiff called his office on November 15, 2002 to verify her work restrictions. The only restriction imposed was that she could not lift more than 20 pounds for the next three months. Tr. 197. There are no actual office notes or medical tests results for the one-year period before May 14, 2004 that support the limitations contained in the questionnaire.

Furthermore, Plaintiff's own testimony indicates that she was functioning at a far higher level than that indicated in the questionnaire. Specifically, Plaintiff testified at the hearing before the ALJ on October 7, 2003. Notably, she reported that she had enrolled in school, was taking 13 credit hours and was maintaining a straight-A, 4.0 average. Not only does Plaintiff's outstanding school performance rebut the physical limitations suggested by the medical questionnaire, but it also rebuts the suggestion that her depression and pain "would preclude consideration of any work with high level mental demands." Pb. 12.

The Court finds that the May 14, 2004 questionnaire has no probative value at all. The Court

5

further finds that there is substantial evidence to support the ALJ's evaluation of Plaintiff's mental condition as non-severe, for the reasons set forth in her opinion.

More problematic, however, is the manner in which the ALJ handled Plaintiff's allegations of carpal tunnel/repetitive strain injuries to her hands. On March 2, 2001 Plaintiff was seen at Concentra Medical Center with complaints of bilateral wrist pain since December 2000, with the right wrist being more painful. Tr. 168. At this point Plaintiff has worked for approximately 25 years in a job requiring her to do a lot of keyboarding. Plaintiff received physical therapy based on the assumption that she had a repetitive stress injury. Tr. 146-169. Changes were made to Plaintiff's workstation to try to accommodate her wrist pain. Tr. 146. Over the course of the next year, however, Plaintiff's pain increased, particularly in her upper arms and shoulders, resulting in Plaintiff's June 2002 surgery for a herniated cervical disc. While it is quite clear that the herniated disc caused the severe pain that Plaintiff experienced late 2001 and early 2002 in her arms, shoulders and neck, the Court is unaware of any medical determination that the herniated disc caused the symptomology experienced by Plaintiff in December 2000. It seems reasonably possible that Plaintiff had a repetitive stress injury to her wrists, but that those symptoms were ultimately masked by the far more severe shoulder and arm pain caused by the herniated disc.

It is clear to the Court that Plaintiff's June 2002 surgery was quite successful, ("The patient has had dramatic relief of her pain following the surgery" Tr. 172), and that by Fall of 2002 Plaintiff experienced significant relief from the very serious pain she was experiencing before surgery. Notwithstanding that relief, Dr. Harvie wanted her evaluated for carpal tunnel syndrome in November 2002. The transcript does not contain the results of such testing, or any evidence that such an evaluation was performed. However, Dr. Harvie prescribed the carpal tunnel evaluation on

6

November 8, 2002 and the last entry in Dr. Harvie's file for Plaintiff is January 6, 2003. The Commissioner received Dr. Harvie's file on February 3, 2003, and it does not appear that any effort was made to obtain subsequent records.

The ALJ dismissed Plaintiff's claim of carpal tunnel pain, stating "[t]he objective medical evidence in the case file does not support a finding of bilateral carpal tunnel syndrome." Tr. 26. As noted above, however, if Plaintiff was evaluated for carpal tunnel syndrome after January 2003 the objective evidence would not be in the Commissioner's file. It is the Commissioner's responsibility to fully and fairly develop the record, which includes obtaining (or directing counsel to obtain) existing medical reports. *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989)  At the hearing, the ALJ did not ask Plaintiff whether she was ever evaluated for carpal tunnel syndrome, as recommended by Dr. Harvie. However, Plaintiff did mention, in passing that she had seen Dr. Harvie a month before the hearing, i.e., in or around September 2003. Presumably there were other visits to Dr. Harvie's office between January 2003 and September 2003, and the records for those visits may or may not reveal the results of Plaintiff's carpal tunnel evaluation. The Court finds that this determination is particularly significant in a case such as this, where the ALJ determined that Plaintiff was able to perform her past relevant work, and that past relevant work required a significant amount of keyboarding.

The Court therefore remands for further development of the record concerning Plaintiff's alleged carpal tunnel syndrome. If, on remand, Dr. Harvie's records do not contain the results of Plaintiff's carpal tunnel evaluation, or the results are not dispositive, the ALJ may need to order a consultative examination. 20 C.F.R. § 404.1512(f) ("If the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification

7

from your medical source, we will ask you to attend one or more consultative examinations at our expense."); *Hawkins*, 113 F.3d at 1166 ("[W]here the medical evidence in the record is inconclusive . . . a consultative examination is often required for proper resolution of a disability claim."). "[T]he ALJ should order a consultative exam when evidence in the record establishes a *reasonable possibility* of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." *Hawkins*, 113 F.3d at 1169 (emphasis added). The current state of the record makes it impossible for the Court to determine whether a consultative exam may be necessary, therefore the Court leaves the decision whether to order a consultative exam up to the ALJ. *Compare Hawkins*, 113 F.3d at 1166 ("[T]he Secretary has broad latitude in ordering consultative examinations."), *with* 20 C.F.R. § 404.1519a(b) (situations requiring a consultative examination).

IT IS SO ORDERED.

_____
**W. DANIEL SCHNEIDER**
**UNITED STATES MAGISTRATE JUDGE**